Good afternoon. This case, Garceau v. Woodford, has been scheduled as an oral argument on remand from the Supreme Court. Since it is a death penalty case, it is automatically allotted 30 minutes per side, but it seems to the panel that many of the issues have already been covered earlier, so we are going to suggest that you try to stick to 20 minutes per side today. Obviously, you were notified that it was going to be 30, and if you are totally relying on that, well, that's understood. But I think we can get to the issues and have a good discussion on a 20 minute per side basis. Counsel for the appellant. Good afternoon. My name is Lynn Cawthon, and I represent Mr. Garceau. I would like to focus my comments first on the violation of Mr. Garceau's due process rights when the extraordinary instruction in this case was given at the guilt phase, and second, on the fact that Mr. Garceau received ineffective assistance of counsel at the penalty trial. And I would like to reserve five minutes for rebuttal. Certainly do so. Turning first to the instruction that allowed the jury to consider evidence of another murder and drug manufacturing and drug dealing, and I quote, for any purpose whatsoever, including but not limited to his character, traits of his character, or his conduct on a specific occasion. The California Supreme Court found that evidence of Mr. Garceau's guilt was overwhelming and concluded that the error was harmless. This was an unreasonable application of the facts in this case. We find that there were significant flaws Unreasonable application of Supreme Court, U.S. Supreme Court law? No, an unreasonable application of the facts to Supreme Court law. All right. Let's hear it. We believe that the court failed to consider the record as a whole and failed to consider the problems with the prosecutor's case. In addition to that, the court never considered the impact of the error on the jury in this case. Thus, the decision was not simply wrong. It was unreasonable. The court unreasonably emphasized the strength of the evidence. It relied on and referred to the statements as reliable confessions, rather than what they actually were. They were statements by people who had, people who were unreliable, who had every reason to lie, who were accomplices in the drug ring, and who were not talking about confessions, but who had every reason to make up statements that would implicate Mr. Garceau. The California Supreme Court also failed to consider the weakness of the case against Mr. Garceau. There was no evidence other than the statements from the co-conspirators. There was no physical evidence. There were no admissions. There was no murder weapon. There were no, there was no testimony by anybody else against Mr. Garceau. And in fact, the evidence showed that Mr. Garceau had a loving relationship with the people who had died. None of this was considered by the California Supreme Court in their decision to say that there was, the strength of the evidence was why there was no prejudice in this case. Thus, the California Supreme Court unreasonably overemphasized the evidence in this case and concluded that the, that the, the erroneous instruction did not cause prejudice. The California Supreme Court also failed to take into account the impact of the error of its instruction on the jury. There is nothing in the California Supreme Court's decision that shows that they even considered the fact that this outrageous instruction would have had any impact on the jury. They never took any time to examine how an instruction such as this would impact the jury's decision. It is clear, not only from this Court's decision in Garceau 1, but for anyone looking at this record in this case, that when the jury was allowed to consider another murder in determining whether Mr. Garceau was responsible for the murder for which he was on trial, it would obviously have had an impact on how the jury determined whether Mr. Garceau was guilty. And in fact, it definitely, there is no question that the jury, without any instructions to tell them otherwise, would have considered that for an unreasonable purpose in this case. In fact, it's not just other crimes evidence. It definitely lifted the burden on the prosecutor in this case. Now, one of the things I'd like to talk about briefly is there has been some misconception about who the witnesses were for the Rambo murder, which is the other crime, the other murder in this case. They are not the same witnesses. In fact, the witnesses in the Rambo murder, there were at least three very important witnesses for that murder that were not witnesses to the murder for which Mr. Garceau was on trial. And those witnesses were people who you might consider civilians. Art Wilson was Susan Rambo's father. And then there were two teenage witnesses, one who was Susan Rambo's brother and another who was a friend of that brother. Now, I would argue they weren't the most reliable people in the world. However, to the jury, they certainly would have seemed to be more reliable because they were not as related to the main actors in the drug conspiracy. And so when you look at the influence of the other murder on the jury, you would find that there were these people who talked about significant aspects of the Rambo murder who were not of that same group that were the witnesses for the murder for which Mr. Garceau was on trial. And so, in fact, allowing the jury to consider without any fettered, any instruction from the court, use that, those witnesses and that evidence for any purpose whatsoever, including whether you decided Mr. Garceau was a bad guy, would really have had an enormous impact, especially because that murder was so similar to the murder that he was that Mr. Garceau was on trial for. None of this was commented upon in any way by the California Supreme Court. And I would suggest that that was an unreasonable application of the facts to the law in this case. In addition, we would suggest that because the California Supreme Court never looked at the impact of all of this information on the jury, that the California Supreme Court failed to reasonably fulfill their duty to take into account Chapman, and that they never looked at the impact on the jury in their determination of whether or not Chapman was fulfilled in this case. And therefore, it is a violation of 2254-D1, and they did not reasonably apply the facts to the law in this case. And I believe that there is, that this Court should find that Mr. Garceau was prejudiced by this outrageous instruction, that, in fact, there is no reason under AEDPA to reverse the relief that was granted on this instruction the first time around, and that we would hope that this Court would reverse on this instruction once again. One other point that I'd like to make on this instruction is that from the very beginning of this case, the Attorney General has agreed with our finding that this was a due process violation. And one of the reasons I think, while they never raised T, was because they felt this was a due process violation. And in fact, the California Supreme Court came to analyze this as a due process violation, because in the original briefing in this case, the Attorney General admitted that it was a due process violation. And it's only in this last round of briefing that they have now decided that it's not a due process violation. So it seems to me that the only issue before the Court is whether or not the California Supreme Court was correct when they found no prejudice. And this Court has already looked at that issue. If there are no questions, turning to the ineffective assistance of counsel claim. Talking about the evidentiary hearing issue with respect to that? Well, you know where two of the three judges stand on that, I assume, by now. Right. Well, we kind of came to this the last time I was here. Assuming that you don't grant relief on the original jury instruction claim. We believe that there really is no need for an evidentiary hearing in this case. Let me interrupt to try to maybe focus your argument a little bit. What might be different to this time is, as the first opinion states, the State, the first time around, I think, virtually conceded the entitlement to an evidentiary hearing. But it appears to take a different position this time around. So that's a changed circumstance, isn't it? Well, it is a changed circumstance. But I don't, I think the State is simply wrong. I don't think there's anything in AEDPA that prevents us from having a hearing. What I do think has changed since we were here the last time is that the law has been, that the California, that the United States Supreme Court has made it very clear that on the facts of our case, which has never, the facts have never been disputed by the Attorney General at any point, that on the facts of our case, given the recent Supreme Court decisions in Williams and Wiggins, that based on those facts, we win on both prongs of Strickland on the record before this Court, and that there's no need for an evidentiary hearing when one looks at the facts in this case. It is clear from the facts that there are only legal issues remaining. On the first prong of Strickland, the record is clear that there was no social history done in this case, that the social history that Wiggins provides for is not even remotely done in this case. There was no comprehensive social history. The appropriate experts were neither consulted or presented. The penalty phase record in this case is barely 30 pages. The trial counsel in this case admits that he never investigated things that were right in front of him, either the Mr. Garceau's Vietnam record or the impact that that had on him, and how his Vietnam service caused him to develop PTSD and how that led him into drug abuse. The district court found based, frankly, I don't know on what, because it wasn't in the record, that certain tactical decisions were made. Well, even assuming that those tactical decisions, which were not supported by the record, were made, the fact of the matter is, under Wiggins, those tactical decisions cannot stand, because they would have to have been made on some investigation, which is clear under the United States Supreme Court, must be based on a reasonable investigation, which clearly was not conducted in this case. And so that leaves us with the prejudice prong of Strickland. And under the prejudice prong, you look at the totality of the mitigation evidence and weigh it against the aggravation evidence. And in addition, the one aggravator that was presented was the kidnapping. And again, the trial counsel failed to mitigate that. And that's a huge problem in this case, because it was an aggravator which said that Mr. Garceau committed a kidnapping. Well, in fact, that kidnapping was dismissed. And it was dismissed because there was evidence that the woman who was supposedly kidnapped, in fact, went willingly along in the truck that she was supposedly kidnapped in. Well, trial counsel failed to put that evidence on. So when the prosecutor argued that this kidnapping was part of an escalating violence by Mr. Garceau and used that kidnapping, which, in fact, according to records, never even occurred, that was a serious problem for Mr. Garceau. And so the totality of the record shows that both prongs of Strickland were clearly violated. And the record is very clear. And the Attorney General doesn't dispute the record. So I think that it's a complete waste of time, money, and judicial resources to send us back, frankly. All right. Well, let's hear from Mr. Tanaka on that point. Do you want to add anything else before taking your rebuttal? Not unless the Court has a question. No. No, thank you. Mr. Tanaka, as you're coming up to the lectern, you might want to share with us your comments about whether the State's position has changed on the ineffective assistance of counsel. Yes, it has, Your Honor. As this Court is well aware, the United States Supreme Court has determined that this is now an AEDPA case. Petitioner is not entitled   Supreme Court jurisdiction. I'm sorry, would you introduce yourself for the record, please? I'm sorry, Your Honor. May it please the Court, Clay Tanaka, Deputy Attorney General. The State respectfully submits that since the United States Supreme Court has determined that this is now an AEDPA case, Petitioner is not entitled for relief on the State's adjudications on the merits, unless the adjudication of that claim resulted in a decision that involved an unreasonable application of the United States Supreme Court authority. That is our position right now, Your Honor. The State submits that it is undeniable that the AEDPA provides more deference to State court adjudications than existed prior to 1996. In this case, the claim was adjudicated on the merits by assuming, without deciding, that a due process violation existed. And the California Supreme Court found that any error was harmless beyond a reasonable doubt. This determination to rely upon Chapman involves a reasonable application of existing United States Supreme Court authority. Now, maybe I'm a little confused here, but you did say, as I recall, in fact, I think we mentioned it in the opinion, that you conceded that, as I recall, the Supreme Court found that a remand for ineffective assistance evidentiary hearing was indicated. If I may, Your Honor, what I meant to say, and if I didn't say this, I apologize. What I meant to say is, if both prongs of the deficient representation was found and prejudice, then it could be remanded. Aren't you just rearguing your position? Because what about, I don't see anything in the AEDPA that changes the cause and prejudice analysis of pre-EDPA law. Do you? Yes, Your Honor, because the California Supreme Court's decision should be entitled to deference. I understand now. I'm talking about, we're talking about now, what I'm talking about is the evidentiary hearing on the ineffective assistance of counsel claim. Correct. The legal standards, as I see them, don't change under AEDPA for that from pre-EDPA law, right? Right. So what's different, what about the Supreme Court's decision has changed our analysis? Since the United States Supreme Court determined that this is, in fact, an AEDPA case, and the state court is entitled to deference, we look back to when Petitioner filed his petition on ineffective assistance of counsel in the California Supreme Court. However, in his petition there, the California Supreme Court examined the claims, assumed for the purposes of argument that each of the claims had merit, and determined that there was no prejudice. And our position is that that finding by the California Supreme Court is entitled to deference. Let me get back to the what's called the due process claim or the instructional error claim. Now, the California Supreme Court assumed in its analysis a due process violation, right? Yes. So there's no decision there to defer to. And I think we also, in our first opinion, assume that we can continue to assume there's a due process violation, right? So the question is, was it harmless? And as you indicated, the California Supreme Court found that it was harmless under Chapman, right? On the other hand, now, the first time around, we concluded that it was not harmless under Brecht. And Brecht is a much more lenient standard of review. In other words, it's much more deferential to the state than Chapman. So it seems to me, if a due process violation is harmful under Brecht, it has to be harmful under Chapman, doesn't it? I respectfully disagree, Your Honor. First, we would submit that there was, in fact, a de facto determination on the merits by the California Supreme Court. But de facto determination, do they count, you know, for what we'll call a deference under the AEDPA? It would be our position that it does. What the California Supreme Court did, comparing this to an ineffective assistance of counsel argument, they moved directly, without addressing the deficient nature of a claim, they moved directly to the prejudice prong. And our position is that that is entitled deference. That is, in fact, a finding on the merits. I understand your general position that it's entitled deference, but I don't think you quite answered Judge Teshima's question. If, assuming that an error is not harmless using the Brecht standard, then necessarily it has to meet the Chapman standard, doesn't it? We would submit that it is. My question was awkwardly worded, but basically, if you survive, if you can't pass Brecht, you don't get the Chapman, do you? Well, Your Honor, I believe the Brecht standard, you do a de novo review. In this case, under Chapman, I hate to say merely, but what we're doing is reviewing the California Supreme Court's determination of harmlessness. And we have to give the California... I don't think there's any difference between a Brecht standard and the Chapman standard. Oh, of course they do. Yes, they do. Okay. Well, maybe this is what you're trying to argue. And if you are, I'm having a hard time arguing it. Even though a finding of harmlessness might be error under Brecht, it might still be entitled to deference under the ADPA as not an unreasonable application of Chapman. Is that sort of like the argument you're making? Yes. I would agree with that. Maybe I'm not doing too good a job because that's not the argument I'm making. But is that more or less the argument you're making? Yes. In other words, that if we independently reviewed the record and the law and we conclude that, well, this is not harmless under Brecht, it's still possible under that same set of circumstances to come to the conclusion that the California Supreme Court's conclusion that the error was harmless under Chapman was not unreasonable. Correct. That's not a finding of fact that we defer to. That's a legal analysis based on the standards of ADPA. Is that what you're saying? Right. Your Honor, what we're saying is what this panel almost has to do is find that the California Supreme Court's conclusion that the error was harmless under Chapman is not a finding of fact that the error was harmless under Chapman is completely irrational. And I don't think we can say that in this case. I think objectively unreasonable was the I mean, it's you can't say completely irrational. You see, you see, that's a problem. See, I think the test is objectively unreasonable. And it's hard to reconcile those two things as being consistent. One, that a decision is not unreasonable under Chapman, yet at the same time violates Brecht. And why in that circumstance, I can't see why the decision in the Chapman would not be objectively unreasonable if it violates Brecht. I mean, that's, you know, sort of the contradiction I think we have to wrestle with in order to get to your conclusion, isn't it? I think our position has consistently been that even under Brecht it was harmless. Well, but you know what this majority of this panel concluded the first time around, and there's nothing in the Supreme Court's decision   And I don't see a problem with changing or remand that, you know, address to that, right? Correct. And we do have a little bit of a law of the case problem on some of those too. Your Honor, we also submit that under Teague, this is a new rule. This is a. What's a new rule? When you say this. I'm sorry. I'm sorry. We're moving. I'm moving back to the propensity instruction. Okay. Okay. Go ahead. Granting this claim under the propensity instruction would create a new rule on which the petitioner cannot be granted relief. There's no holding from the United States Supreme Court that prohibits jury instructions of this nature. All right. Thank you. Any further? I'd be happy to answer any other questions the Court might have. I think that's it. Thank you. Counsel, you have some reserve time. I'll just take a few minutes of the Court's time. I have to say that I feel it's outrageous for the State at this point to say that this is a new rule, given that from the beginning of this case, which is about 17 years ago, they've said that this was a due process violation. And so the idea that now they say it's a new rule is a bit much. They also said in their briefs on this issue that they ADPA does not bar an evidentiary hearing in this case. Well, when I say this issue, what issue are you referring to now? On the IAC question. All right. That was a question that the Court had. They did say in their briefs that there was no problem from ADPA from having an evidentiary hearing. So maybe they've changed their minds, but that was what they said. They're raising their ‑‑ apparently changed their minds twice, one on the ineffective assistance remand issue and then the other the ‑‑ They have never claimed until now that there was ‑‑ right. And they've never, as this Court is aware, I think the last time we argued here, that they've never raised Teague. And they've always claimed that this was a due process violation. So for whatever it's worth, that is another change in the State's position. And in terms of the California Supreme Court's decision in this case with regard to this instructional issue, I think it really doesn't matter whether or not the California Supreme Court did reach the issue or didn't reach the issue. I mean, it seems to me if the California Supreme Court did find that it was a due process violation, then we respect that under ADPA and we simply move to harmless error. If the California Supreme Court didn't reach the issue, then this Court on its own decides whether it's a due process violation and then we move to harmless error. Either way, we submit that, in fact, this Court was right the first time around finding it to be a due process violation. It's the kind of bizarre instruction that so offends the senses that I think as Judge O'Scanlan wrote the first time around, it's something that you really look at and you find to be the kind of outrageous violation that you know when you look at it is going to have a historical precedent. And so I don't really think it matters whether or not the California Supreme Court assumed it or reached it, that under ADPA and under this Court's first decision it is a due process violation and the only question at issue is whether or not it's harmless error. And I do agree with the Court that if it's harmful under Brecht, then it should be harmful under Chapman. Well, but what about, you know, as a matter of theory, isn't it possible for us to conclude that it violates Brecht, but at the same time that the California Supreme Court's conclusion that there's no Chapman error could be a not unreasonable application of Supreme Court law? I agree. I actually think that that is possible under ADPA, but I think that it's not possible on the facts in this case, because as I tried to say in my argument, because of the way the California Supreme Court analyzed the facts in this case, it was an unreasonable application because they failed over and over again to take into consideration the types of things that they needed to take into consideration in order to have a reasonable application under Chapman. And in particular, the things that they took, that they failed to take into consideration in terms of the effect on the jury in this case is a complete failure to apply Chapman to the facts in this case. So I agree that in theory you could have a decision where you could find no prejudice under Chapman. But I mean, I certainly think it's possible. It'd have to be a pretty close case, though, don't you think? I think it would be. But, you know, ADPA, it seems that some of the cases are coming out with such deference to the way a state court does things. I suppose in theory it is possible, but I don't think it's possible on the facts in this case. Thank you. Thank you very much, counsel. The case just argued will be submitted for decision, and the Court will adjourn.
judges: O'scannlain, Tashima, Thomas